IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARREN BOSTON,** | : |
| *Plaintiff,* | : |
| v. | : Case No.: 2:23-cv-2073 |
| **HOME365 LLC,** | : |
| *Defendant.* | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Darren Boston, by and through the undersigned counsel, J.P. Ward & Associates, LLC and, specifically, Justin M. Bahorich, Esquire, who files the within Complaint in Civil Action against Defendant, Home365 LLC, of which the following is a statement:

## PARTIES

1. Plaintiff, Darren Boston (hereinafter "Plaintiff"), is an adult individual who currently resides at 629 E. Waterfront Dr, Apt. 1204, Homestead Pennsylvania, 15210

2. Defendant, Home365 LLC (hereinafter "Defendant"), is a corporation with a principal place of business located at 106 Isabella Street, Suite 100, Pittsburgh Pennsylvania 15212.

## JURISDICTION AND VENUE

3. Jurisdiction is proper as Plaintiff brings this lawsuit under Title VII of the Civil Rights Act of 1964 (hereinafter, "Title VII") 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ('hereinafter, "PHRA") 43 P.S. §§ 951-963.

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

5. On August 29, 2022, Plaintiff began his employment with Defendant.

6. During his time with Defendant, Plaintiff was employed as a Regional Property Manager and was responsible for managing property rentals.

7. Plaintiff was a dedicated employee who was qualified for the position he held with Defendant.

8. At all times relevant hereto, Plaintiff was a homosexual man and member of a protected class.

9. On or about September 15th and 16th, 2022, Plaintiff attended a training session in Lancaster, Pennsylvania with his supervisor, Edin Pasic (hereinafter, "Mr. Pasic").

10. During the training session, Mr. Pasic asked Plaintiff "do you have a boyfriend or a girlfriend?" Plaintiff responded that "I don't have a boyfriend, but I would."

11. Throughout the training, Mr. Pasic made numerous inappropriate comments about his wife, specifically about their sex life and how "how [she] is."

12. Mr. Pasic also made inappropriate comments about his "wild" experience in college and how he "had girls sitting on his face at the University of Pittsburgh."

13. During their lunch break, Mr. Pasic asked Plaintiff, "Would your friends think I'm hot?"

14. Mr. Pasic even asked Plaintiff to take a photo of him to send to his friends. After Plaintiff took the photo, Mr. Pasic stated, "you can take a better picture than that," and instructed Plaintiff to take yet another photo of him.

15. Following the training session on September 16, 2022, Mr. Boston, Mr. Pasic and a group of employees were invited to the residence of Defendant's Vice President of Growth and Development, Luis Santiago, after attending dinner and going bowling.

16. That evening, the group of employees, including Mr. Boston and Mr. Pasic, stayed overnight at Mr. Santiago's residence as part of the work event.

17. Upon information and belief, following the stay at Mr. Santiago's residence, Mr. Pasic had a conversation with Defendant's Chief Investments and Growth Officer, Chad Gallagher (hereinafter "Mr. Gallagher").

18. Mr. Pasic, Mr. Santiago, and another employee, "Chris," made numerous false allegations against Mr. Boston accusing him of being sexually inappropriate around coworkers at the training sessions.

19. The nature of the allegations against Mr. Boston were extreme and offensive, including allegations that Mr. Boston had attempted to perform oral sex on "Chris" when everyone was asleep, and that Mr. Boston was displaying pornographic images of himself engaged in sexual acts to his coworkers.

20. According to Defendant's Position Statement, when Mr. Santiago asked Chris if he wanted to contact law enforcement regarding Mr. Boston's attempts to have oral sex with him, Chris declined and stated that he just wanted to "forget this happened."

21. These false allegations against Mr. Boston were pretext and due to Defendant's employees being uncomfortable with Mr. Boston's homosexuality in an attempt to get Mr. Boston terminated.

22. After returning from the training session in Lancaster, Mr. Boston began work at Defendant's Pittsburgh location.

23. While working at Defendant's Pittsburgh location, Mr. Boston was ignored by supervisors and co-workers when he attempted to ask questions about work.

24. Mr. Boston inquired why he was unable to obtain answers to any of his questions and raised his concerns with his supervisors.

25. Thereafter, during the week of September 26, 2022, Mr. Gallagher met with Mr. Boston regarding the allegations against him from the night at Mr. Santiago's residence on September 16, 2022.

26. Mr. Gallagher informed Mr. Boston that he was accused of watching pornography during a meeting, showing pornography and images of Mr. Boston engaged in sexual activity to other employees, and sending a photo of Mr. Pasic to his friends.

27. Mr. Boston informed Mr. Gallagher that Mr. Pasic consented to his photo being taken and that he was the one who requested that the photo be taken and sent in the first place, asking if Mr. Boston's homosexual friends would "think he is hot."

28. Mr. Boston also informed Mr. Gallagher that while at the training session and Mr. Santiago's residence, Mr. Pacis was showing him and others sexually inappropriate videos on TikTok.

29. Mr. Boston denied all other allegations against him.

30. Mr. Boston's heterosexual coworkers, including Mr. Pacis, Mr. Santiago and "Chris" were not subjected to the same scrutiny or investigation as Mr. Boston, despite Mr. Boston's own reports of Mr. Pacis' inappropriate conduct to Mr. Gallagher during their meeting.

31. Additionally, Mr. Gallagher never raised any allegations against Mr. Boston regarding an attempt to have oral sex with another employee, "Chris," at Mr. Santiago's residence.

32. Mr. Boston was not made aware of this allegation until it was raised by Defendant in its Position Statement responding to Mr. Boston's Charge of Discrimination.

33. Mr. Boston asked Mr. Gallagher for proof of these accusations but Mr. Gallagher refused. Mr. Boston was never provided any evidence or documentation by Defendant.

34. Further, in Defendant's Position Statement responding to Mr. Boston's dual-filed Charge of Discrimination, Defendant did not provide any documentation of complaints made against Mr. Boston or evidence substantiating the serious allegations against him.

35. Upon information and belief, no further investigation was conducted following the meeting between Mr. Gallagher and Mr. Boston.

36. Prior to his termination, Mr. Boston sent a follow up email again asking Defendant for evidence to substantiate the allegations against him.

37. Without any explanation and based on pretextual reasoning, Mr. Boston was terminated on October 3, 2022.

38. Following Mr. Boston's termination, Defendant offered Mr. Boston a severance agreement.

## COUNT I
## SEXUAL DISCRIMINATION
## IN VIOLATION OF TITLE VII AND THE PHRA

39. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

40. Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.S. §2000e-2(a)(1).

41. Title VII makes it unlawful for an employer to discriminate against an individual "because of" the individual's sex, by subjecting an individual to an adverse employment action for being homosexual or being a transgender person. When an employer subjects a person to adverse employment action for traits or actions that the employer would not have questioned in members of a different sex, then sex plays a necessary and undisguisable role in the decision, which is exactly what Title VII forbids. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) (citing 42 U.S.C.A. § 2000e-2(a)(1)).

42. The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)).

43. To establish a *prima facie* case of sexual orientation discrimination, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position she sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated

5

non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973). See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

44. Plaintiff is a homosexual male and is therefore a member of a protected class under Title VII.

45. Plaintiff was qualified for the position he held with Defendant.

46. Plaintiff suffered the ultimate adverse employment action when Defendant terminated him on the basis of his sexual orientation under pretextual reasoning.

47. Plaintiff's heterosexual coworkers were not subjected to the same scrutiny, investigation and adverse employment actions and were treated more favorably.

48. As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

49. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to such other relief as deemed just and proper.

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII AND THE PHRA**

50. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

51. A plaintiff may prove that an employer violated Title VII by showing employer's actions created a hostile work environment. "To establish a hostile work environment claim, a plaintiff must establish that: (1) the employee suffered intentional discrimination because of his or her protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in this position; and (5) there is a basis for employer liability." *Clair v. Agusta Aerospace Corp.,* 592 F. Supp. 2d 812, 821 (E.D. Pa. 2009)).

52. The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. Septa*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

53. As previously stated, Plaintiff was subjected to constant discrimination and harassment based on his sexual orientation.

54. This discrimination detrimentally affected Plaintiff and would detrimentally affect any reasonable person in the same position.

55. Furthermore, Defendant is liable for this discrimination as one of the main perpetrators of this discrimination was Plaintiff's supervisor, Mr. Pacis.

7

56. As a direct and proximate result of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

57. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, including back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to such other relief as deemed just and proper.

**COUNT III**
**RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF TITLE VII AND THE PHRA**

74. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

75. To establish a *prima facie* case of retaliation under Title VII, a Charging Party must provide evidence that: (1) he "engaged in activity protected by Title VII"; (2) the employer took an "adverse employment action" against him; and (3) there was a "causal connection" between her "participation in the protected activity and the adverse employment action." *Kengerski v. Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (citing to *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006); *See also*, *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

76. The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

8

77. Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

78. "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. University of Pittsburgh Medical Center* 691 F.3d 294, at 307 (3d Cir.2012), citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3rd Cir.2007).

79. Mr. Boston engaged in protected activity under Title VII when he reported sexual discrimination and harassment to Defendant and Mr. Gallagher.

80. Defendant took adverse employment actions against Mr. Boston when he was investigated and ultimately terminated.

81. The temporal proximity between Mr. Boston engaging in a protected activity and Defendant's ultimate adverse employment action of termination, demonstrates a retaliatory motive by Defendant.

82. As a direct and proximate cause of the aforementioned conduct, Mr. Boston suffered actual damages, including but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience, all in the past, present and future.

83. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, reckless and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, including back pay, front pay, compensatory damages, punitive

damages, costs and reasonable attorneys' fees, in addition to such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

                                                              Respectfully submitted,

                                                              **J.P. WARD & ASSOCIATES, LLC**

Date: December 5, 2023                           By:   /s/ *Justin M. Bahorich*
                                                                Justin M. Bahorich (Pa. I.D. No. 320347)

                                                               J.P. Ward & Associates, LLC
                                                               The Rubicon Building
                                                                201 South Highland Avenue
                                                               Suite 201
                                                                Pittsburgh, PA 15206

                                                                Counsel for Plaintiff